THE ATTORNEY GENERAL
OF TEXAS



Grover Sellers
~~XXXXXXXXXXXXXX~~XXX
ATTORNEY GENERAL

Hon. Geo. H. Sheppard          Opinion No. O-7341
Comptroller of Public
Accounts                       Re: Approval by Comptroller of a claim
Austin, Texas                  for refund of tax paid on motor fuel
                               thereafter sold by the claimant ex tax
                               to aircraft owners when the claimant
                               can make oath that the motor fuel was
Dear Sir:                      actually used for non-highway purposes?

        In your letter of August 5, 1946, you have requested
an opinion from this office relative to the above subject and
in your letter you have presented two specific questions. The
first of these asks whether the Comptroller can "legally approve
a claim for refund of tax paid on motor fuel thereafter sold by
the claimant ex tax to aircraft owners when the claimant can make
oath that the motor fuel was actually used for non-highway pur-
poses." The second question is conditioned on an affirmative
answer to the first. Specifically, two cases have occasioned
your request and the paragraphs of your letter presenting them
are quoted:

        "In the first case, an airport operator has purchased
    large quantities of Aviation fuel from a licensed refund
    dealer in Texas obtaining an invoice of exemption for the
    purpose of filing claim for refund of the tax paid by him
    as soon as the motor fuel has been used for non-highway
    purposes. The operator, however, did not use all of the
    fuel in his own aircraft but he sold a large part of the
    fuel to various other aircraft owners who fueled their
    planes at his field. In this instance the airport opera-
    tor contends that he did not collect the tax from the
    purchasers as he resold the fuel although the records
    show that the profit he added to the original cost of the
    fuel was more than enough to cover twice the amount of the
    tax paid.

        "In the next case, a municipal airport located on
    property owned by a city in Texas likewise claimed refund
    of tax paid on motor fuel thereafter sold to various air-
    craft owners who stored their planes in the airport hang-
    ars. In this instance the operator of the airport col-
    lected a storage fee from the airplane owners but the fuel
    sold to such owners was sold at actual cost after deduct-
    ing the 4¢ tax. In other words, aviation fuel that cost
    18¢ per gallon including tax was sold at 14¢ a gallon
    (Hypothetical figures) to said aircraft owners and the

municipal airport claimed the refund instead of
the actual users.

The motor fuel tax, a refund of which is here in question, is imposed by Article 7065b, Section 2a, V.A.C.S. which provides in part as follows:

"There shall be and is hereby levied and imposed
(except as hereinafter provided) upon the first sale,
distribution, or use of motor fuel in this State an
occupation or excise tax of Four (4) cents per gallon
or fractional part thereof so sold, distributed, or
used in this State  * * *

" * * * In each subsequent sale or distribution
of motor fuel upon which the tax of Four (4) cents
per gallon has been collected, the said tax shall be
added to the selling price, so that such tax is ul-
timately paid by the person using or consuming said
motor fuel for the purpose of generating power for
the propulsion of any motor vehicle upon the public
highways of this State."

Clearly, under the term of this statute, the tax imposed thereby is to be passed on to subsequent purchasers and is to be paid ultimately by the user or consumer.  It follows that any exemption from the tax should inure to the benefit of the user or consumer and that any refund thereof must relate directly to the use or consumption of the motor fuel on which the tax has been paid.  This is recognized in the provisions for a refund of this tax following in Section 13 of this same Article 7065b.  It is not deemed necessary to quote at length from, nor analyze in detail, all of the provisions of this section.  Suffice it to say that the intendment of the entire section and of each of its subsections is that the claim for a refund of motor fuel taxes shall be made only by the user or consumer, and that no refund shall be made unless such user or consumer purchased the motor fuel from a "refund dealer" as provided.

This section 13 providing for refunds operates as an exemption to motor fuel taxes generally imposed.  As such it should be strictly construed and the burden is on the one claiming an exemption from taxes to bring himself clearly within the statute. (See Methodist Church v. City of San Antonio, 201 S.W. 669).  Exemption from taxation is never favored and in construing laws exempting any citizen or class of property, all doubts are resolved against the exemption.  (See Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926).

The section is an integrated statute devoted mostly to procedures for obtaining refunds of the kind here in question. By its terms (see subsection a) the refunds authorized are to be made "in the manner and subject to the limitations described herein." The procedures prescribed are of the essense of the statute and a compliance therewith is a condition precedent to the right to the refunds that it authorizes. A "refund dealer" is defined and (in subsection b) the sale of motor fuel on which a refund of the tax may be authorized by anyone without a refund dealer's license is prohibited and made a misdemeanor. Throughout the statute it is manifest that a claim for a refund is to be made by, and any refund paid thereon is to be paid to, the actual user or consumer.

There is no standard provided nor any reason found for permitting any exception to the above requirements. This is supported by several considerations. First, the applicable rules of construction above mentioned require a strict compliance with the procedures prescribed in the statute. Second, under the principle of departmental construction, the long continued policy of the Comptroller's Department in requiring airports and boatdocks desiring to sell motor fuel to private owners, to secure a refund dealer's license would resolve any possible doubt as to the instant cases. And third, there is the cogent reason that any exception could be extended to other sellers in the course of distribution or enlarged upon through the sale of increased quantities until the very purpose of the statute would be defeated.

The foregoing considered, it is the opinion of this office that the Comptroller may not legally approve a claim for a refund of motor fuel taxes unless (1) the claimant was the actual user or consumer of the motor fuel and (2) the claimant purchased such motor fuel directly from a licensed refund dealer. This negative answer to your first question makes an answer to the second unnecessary. It may be noted that the price at which the fuel is sold does not affect the procedure for claiming a refund.

Accordingly, you are advised that in the cases presented the claims filed by persons other than the user or consumer may not be approved.

APPROVED SEP 11, 1946
/s/ Grover Sellers
ATTORNEY GENERAL OF
TEXAS
APPROVED: OPINION COMMITTEE
BY:     BWB, CHAIRMAN
JL:JMc:wb

Yours very truly
ATTORNEY GENERAL OF TEXAS
By  /s/ Jackson Littleton
Jackson Littleton, Assistant